**FORT WORTH & DENVER RAILWAY COMPANY, Appellant,**

v.

**Mrs. O. B. WILLIAMS et al., Appellees.**

No. 7213.

Court of Civil Appeals of Texas.

Amarillo.

April 8, 1963.

Rehearing Denied May 27, 1963.

**926**

Dean & Nowlin, Plainview, Tillery, Hyder & Law, Fort Worth, for appellant.

Huff & Bowers, Lubbock, for appellees.

DENTON, Chief Justice.

A more thorough study of this case upon the motion for rehearing has convinced me a further discussion of the case is advisable. A general statement of the nature and the result of the case has been set out in the original opinion, therefore, a repetition of the general facts surrounding the collision and a restatement of the jury findings are not necessary.

Seventeen of appellant's points of error contend there was insufficient evidence to support the jury's answers to the special issues concerning the negligence of the appellant's employees and contributory negligence of the deceased, O. B. Williams. In addition, appellant urges by nine other points of error that the jury's answer to the special issues which found the deceased was not guilty of contributory negligence, and the finding that the crossing was extra hazardous was not supported by any evidence.

The first group of points raising the sufficiency of the evidence presents a question of fact. In order to pass on these issues, it is necessary that we review and consider all the evidence. As I understand it, the primary basis for appellee's cause of action is that the crossing was extra hazardous immediately prior to the collision. The other alleged acts of negligence on the part of appellant's employees are elements of this broader question. Appellee concedes the crossing itself is not hazardous. There were no natural obstructions in the immedi-

ate vicinity of the crossing to obscure the view of approaching motorists. It has long been established that the particular conditions at a particular time may render a crossing extra hazardous. Beaumont, S. L. & W. R. Co. v. Richmond (Tex.Civ. App.), 78 S.W.2d 232. The Commission of Appeals in Tisdale v. Panhandle & S. F. Ry. Co., Tex.Com.App., 228 S.W. 133, 16 A.L.R. 1264 (Opinion Adopted), stated the general rule as follows:

> "Conditions surrounding a crossing may and do, change materially from time to time. A flagman might not be required under the law at a certain crossing at one time, and yet it might be negligence to fail to provide one there at another time. The sole question for determination is whether or not at the time of the accident the conditions surrounding the crossing in question rendered it more than ordinarily hazardous or unusually dangerous."

Appellee's contention, both in the trial and on this appeal, is that the headlight of the passenger engine so obstructed the boxcar at the crossing that the deceased was unable to detect it in time to stop his automobile; and that this condition rendered the crossing extra hazardous. Appellee then contends that under such a hazardous condition the appellant's employees were negligent in failing to perform certain alleged precautions, to-wit: Place a fuse on the east side of the train; failure to place a signalman on the highway; and that they were negligent in failing to cut the train so as to clear the crossing. If appellee's theory of this case is sufficiently proved, the many cases which hold a boxcar is so easily seen that extra precautions are not necessary would not be controlling here. In my opinion the pleadings and evidence are sufficient to raise this question of fact. As the deceased, O. B. Williams, was killed almost instantly and his twelve-year old son was asleep in the car at the time, no one was in a position to testify directly to the effect of the light. William G. Chand-

ler, Jr., fire chief of Petersburg, was called to the scene of the collision shortly after it occurred. He testified: "I was remarkably close before I saw the boxcar. And, one of the things that stands in my mind was that all of a sudden seems like there was a boxcar materialized out of the darkness and I was—it seemed close. Now what was the cause of it I don't know."

 The trial court admitted into evidence an experiment conducted by appellee's attorney. It was in the form of a moving picture of an experiment designed to simulate the conditions existing at the scene of the collision. Appellant's objection to the introduction of the evidence was based on the ground the experiment was not under substantially similar conditions as existed at the scene of the collision. In my opinion the question of the admissibility of this type of evidence is largely within the discretion of the trial court, and goes more to the weight than to the admissibility thereof. It was within the province of the jury to consider and weigh this evidence. The attorney who conducted the experiment testified to the technique and equipment used and the circumstances under which this experiment was conducted. The jury had the benefit of this testimony in weighing and considering this evidence. It is to be noted the attorney explained that this experiment was performed only because of his inability to use the facilities of the appellant railroad company. In my opinion the admission of such evidence was not reversible error. It is well settled that ultimate facts in negligence cases may be proved by circumstantial as well as direct evidence. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273. This case is also authority for the rule that the jury is not only the judge of the facts and circumstances proved, but may also draw reasonable inferences and deductions from the evidence adduced before it.

Appellant introduced evidence to show the crossing was open and obvious, and that the approach was from a straight line for some one-half mile. There was evidence the fuse thrown on the west side of the tract was visible to drivers approaching from the east, and that the freight train had stopped on the crossing only a short time before the collision occurred. A physicist testified to certain tests he made with a light meter. He testified a light such as that shown from the engine did not obscure a freight car at a distance of 1,300 feet "if there is no temperature gradient of an unusual nature in the air. That is, it has to be a vertical temperature gradient." The witness had not known of such conditions in any of his experiments, but there was nothing in the record concerning the "temperature gradient" at the time and place of this collision. Appellant also offered testimony of several witnesses who observed an experiment conducted at the scene by the railway company. The test was conducted by placing freight cars and an engine in the positions they were in at the time of the collision. These witnesses testified they observed the freight cars some 125 to 140 yards ahead, and they saw the lighted fuse at least 100 yards from the tracks. It is obvious that the testimony presented in this case is conflicting and contradictory.

In Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332, Justice Simpson made the following observation, "Each case of a crossing collision is characterized by its own particular facts, and manifestly it would be most difficult to contrive a generalization which would aptly fit every situation." In this case the crossing was open and the approach was straight and unobstructed. The collision occurred on a clear night at approximately midnight. A freight train was placed on an adjoining sidetrack to permit a passenger train to proceed on the main line. In the process, the freight train blocked the highway crossing. There was evidence the passenger train was some 1,000–1,300 feet from the crossing at the time of the impact. The passenger engine's headlight was admittedly shining straight ahead as it moved slowly toward the crossing, and it obviously threw

its light rays onto the main track which lay to the east of the side track upon which the freight train was situated. The main track was between the freight train and approaching traffic from the east. The passenger train was proceeding toward the crossing at a slow rate of speed. It is reasonable to assume Williams could see the passenger train's headlight as it approached from his left. In my opinion this constituted a distraction to the deceased. The fuse light shining under the boxcar could likewise have created the illusion that the crossing was open and clear. Under such circumstances, it has been held that the issue of contributory negligence becomes a fact issue to be determined by the jury. Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S.W. 139. Beaumont, S. L. & W. R. Co. v. Richmond, supra.

■ I am of the opinion this Court's original opinion was incorrect in citing and following the rule of law laid down by McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391. The holding that the deceased, O. B. Williams, voluntarily exposed himself to a danger he realized, or should have realized, has no application here. On the contrary, the applicable rule of law under the facts and circumstances here is that it is presumed the deceased was doing whatever was reasonably necessary for his own safety. This presumption is strengthened by the fact the deceased's son was a passenger in the car at the time. International-Great Northern R. Co. v. Acker (Tex. Civ.App.), 128 S.W.2d 506 (Dismissed). Gulf, C. & S. F. Ry. Co. v. Bouchillon (Tex.Civ.App.), 186 S.W.2d 1006 (Refused, WM). Dewhurst v. South Texas Rendering Co. (Tex.Civ.App.), 232 S.W.2d 135 (Refused, NRE). After reviewing all the evidence together with the circumstances and the reasonable inferences the jury may draw from the evidence before them, I am of the opinion the evidence is sufficient to support the jury verdict.

■ Appellant's next group of points of error deal with the contention there was no evidence to support the jury verdict which found no contributory negligence on the part of the deceased. Texas & Pac. Ry. Co. v. Day, supra, is the authority for the rule: "It is only in instances where one crossing a railroad track has failed to exercise any degree of care for his safety that our courts have felt impelled to deny a recovery as a matter of law." See also Hines v. Arrant (Tex.Civ.App.), 225 S.W. 767 (Error Refused). In passing on these points raising the "no evidence" question we are required to review the evidence in the light most favorable to the verdict and disregard all evidence which is adverse or contrary to the favorable evidence. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114. In so viewing this record, I am convinced there was evidence to support the jury's verdict. These points of error are without merit and should be overruled.

■ Appellant further complains of certain jury argument of appellee's counsel. It is not deemed necessary to set out the arguments complained of, but in my opinion the arguments are not of such a nature as to require a reversal of the case. Appellant has totally failed to sustain its burden of proof as required by Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596.

■ Appellant urges that the amount of damages assessed by the jury is excessive. In response to the damage issue, the jury awarded Mrs. Williams, the surviving wife and mother, $44,000.00; Linda Gay Williams, a daughter, $2,750.00; Kenneth Brode Williams, a son, $9,000.00; and Rodney Glenn Williams, a son, $11,000.00. This is a total recovery of $66,750.00. Appellee's pleadings and prayer for damages are somewhat confusing, but a careful analysis of such pleadings indicate the maximum amount that can be justified is a recovery of $60,000.00 for both the surviving wife and children. Under this record it is apparent the judgment is excessive by the sum of $6,750.00. By the au-

thority given this Court by Rule 440, T.C.R.P., I would require a remittitur of such sum and direct that the amount awarded Mrs. Williams be reduced by that amount.

All of appellant's points of error have been examined and considered, and those which have not been specifically overruled are without merit.

I would, therefore, reverse and remand this case unless appellee, Mrs. O. B. Williams, files a remittitur in the amount of $6,750.00 within fourteen days after the date of this opinion. In the event such remittitur is tendered, I would reform and affirm the judgment of the trial court.

CHAPMAN, Justice (concurring opinion on motion for rehearing).

A study of the dissenting opinion of Chief Justice DENTON prepared after the motion for rehearing of appellee was filed has convinced me this court was in error when it reversed and remanded this case for another trial instead of reversing and remanding unless a remittitur was filed. I therefore concur in the dissenting opinion and respectfully disagree with the result and reasoning that led to the result in the original opinion.

Since these conclusions make it obvious that two members of this court agree that the case should be affirmed if the remittitur suggested by Chief Justice DENTON is filed within fourteen days, the original opinion must become the dissenting opinion herein in the event the remittitur is filed within the time required.

NORTHCUTT, Justice (dissenting opinion on motion for rehearing).

This dissent is in part the original opinion handed down on February 18, 1963.

Since the original opinion herein was written by me and now becomes the minority opinion, I deem it necessary to further review the record herein. The crossing here in question was a country railroad crossing and not in a city limits. The freight train had just pulled on to the side track and the passenger train was proceeding to pass on the main track when the accident happened. There is no showing of a necessity for the freight train to have been cut while the passenger train was passing or that it could have been cut before the passenger train approached. Appellees contend the headlight of the passenger engine so obstructed the boxcar at the crossing that the deceased was unable to see it in time to stop his automobile and that that condition rendered the crossing extra hazardous. The testimony shows that the light on the passenger train was such as required by Article 6372, Texas Civil Statutes, and consequently would not be considered as any act of negligence in making the crossing extra hazardous as it was required by law to have the kind of light it had on the passenger train. The record further shows the appellant had all signals calling attention to the crossing as required by statutes.

The Supreme Court held in the case of Texas & N. O. R. Co. v. Compton, 135 Tex. 7, 136 S.W.2d 1113, that negligence could not be based upon the omission to equip its freight cars with lights and have the same burning at night; to equip its crossing with signal bells or lights or to have a watchman stationed thereat. I am unable to see where there has been shown any negligence in this case on the part of the railroad company and I therefore respectfully dissent to the majority opinion.

Mrs. O. B. Williams, surviving wife of O. B. Williams, brought this suit against the Fort Worth & Denver Railway Company for herself, individually, and as next friend and in behalf of her three minor children, for damages growing out of the death of O. B. Williams, alleged to have occurred as the result of a collision between the car driven by the said O. B. Williams and a freight train of the appellant.

For convenience the railway company will hereafter be referred to as appellant

and Mrs. Williams and the children as appellees. On the night in question, the freight train here involved in the accident left Lubbock sometime after dark going to Childress. Sometime after the freight train had departed a special passenger train left Lubbock going to Childress. The freight train was to go on the side track at Petersburg to permit the passenger train to pass and proceed in front of the freight train. Both trains were going almost in a northerly direction. Just prior to arriving at Petersburg the freight train crew saw the lights from the passenger train behind them. When the freight train reached the point where it was to go onto the side track, the head brakeman, that rode on the engine, got off of the freight train and threw the switch to permit the freight train to enter the side track and after throwing the switch got back on the engine and rode to the far end of the side track. After the freight train cleared the main track, the rear brakeman on the freight train dropped off and threw the switch so the passenger train could continue on the main line. Soon after the freight train had cleared the main line the passenger train proceeded down the main line and was approaching the crossing in question when the accident occurred. The passenger train was beside some portion of the freight train when the accident happened. Just how far back from the crossing the evidence varies. The passenger train stopped approximately three hundred feet from the crossing in question. The crossing was not inside the city limits of Petersburg. When the freight train moved into the side track, it extended across the roadway and blocked the highway traffic at that time. Mr. Williams crossed the main track and ran into the boxcar in the freight train on the side track and was killed almost instantly.

It was appellees' contention that appellant by leaving the freight train on the crossing as it did created an extraordinary dangerous and hazardous crossing and that appellant was negligent in not placing a flagman at said crossing at the time and

prior to the alleged accident and such negligence was a proximate cause of the damages of appellees. They pleaded appellant through its agents, servants, and employees was guilty of the following acts and omissions which constituted negligence and a proximate cause of the collision in question:

"1. The defendant was guilty of negligence in failing to place a signalman on said highway to warn the motoring traffic of this unlighted freight box car.

"2. The defendant was guilty of negligence in failing to have said signal.

"3. The defendant was guilty of negligence in displaying brilliant headlights at right angles or approximate right angles to the eyes of the motoring public, thus causing objects on the other side of the light to be obscured from the vision of the motoring public just before the motoring public is required to cross the tracks of the defendant herein.

"4. The defendant was guilty of negligence in not providing the parked freight train with lights to warn the motoring public of the presence of the box car."

The case was submitted to a jury upon special issues. In answer to such issues the jury found that the crossing was an extra hazardous crossing immediately prior to the collision in question; that appellant failed to place a signalman on the highway after the freight train stopped on the switch before the accident, that it was negligence and a proximate cause of the accident; that the freight train crew failed to throw a fusee on the east side of the freight train immediately before the collision, that it was negligence and a proximate cause of the accident; that the freight train crew failed to keep a proper

lookout for the deceased, that it was negligence and a proximate cause of the accident; that the employees were negligent in failing to cut the crossing prior to the time and on the occasion of the collision and that such negligence was a proximate cause of the collision in question; that the deceased was not driving his car at a high and dangerous rate of speed under the circumstances; that deceased was not driving his automobile without keeping a proper lookout for the locomotives and trains at or occupying the crossing in question; that the beam of light from the passenger train engine obscured the freight train beyond such beam of light from the vision of the deceased; that it was not negligence for deceased to continue to drive his car into such light when his vision of objects beyond such light beam was obscured; that deceased did not fail to use ordinary care to observe either the crossarm, reflectorized signal, or the circular highway crossing marker that he was approaching a railroad crossing; that deceased did not violate Subsection 86(c) or 86(d) of Article 6701d of Texas Statutes; that the accident was not the result of an unavoidable accident. As to damages the jury found for Mrs. Williams in the sum of $44,000; Linda Gay Williams $2,750; Kenneth Brode Williams $9,000; and Rodney Glenn Williams $11,000, making a total of $66,750. Judgment was granted for the appellees for the total $66,750 as found by the jury and from that judgment the appellant perfected this appeal.

By appellant's first point it is contended the evidence was insufficient to support the findings of the jury that the crossing in question was extra hazardous and also by other points of error assigns errors as to the insufficiency of the evidence as to all other points of negligence. It is admitted by the appellees that the crossing was not an extra hazardous crossing until the freight train blocked the crossing. The deceased was approaching the crossing from the east going west. The freight train was on the side track which was just a few feet west of the main line. There were no obstructions blocking the view of anyone approaching the crossing from the east. Deceased on numerous occasions had crossed this crossing and had passed over it the afternoon prior to the accident that night. There were proper signs on the highway notifying travelers on that highway of the crossing and the crossing could be seen from one-half mile to three-quarters of a mile. The freight train moved into the side track to permit the passenger train to pass and the passenger train was proceeding to pass when the deceased immediately crossed the track in front of the passenger train causing the passenger train to stop. It is appellees' theory because of the lights on the passenger train engine it so blinded the deceased to the extent he could not see through the light and could not see the freight train on the passing track. The passenger engine had statutory lights as it was required to have. As we view this record, the only theory under which the appellees could hold appellant guilty of any negligence at all would be in its failure to cut the freight train at the crossing. This crossing being situated so that it was open, straight, and upon a level highway it could not have been an extra hazardous crossing. We are familiar with the fact that a crossing may become an extra hazardous crossing from temporary conditions which make it so at the time of the injury. The fireman on the freight train dropped a lighted fusee on the highway, in which deceased was traveling, just west of the freight train and said burning fusee was plainly visible from both sides of the freight train. The testimony shows if a fusee was dropped on the east side of the freight train, that would compel the passenger train to stop. When the front brakeman got off of the freight engine to throw the switch for the freight train to go on the side track, the passenger train was about half a mile behind the freight train. The freight train moved on slowly onto the side track and the passenger train had proceeded on the main line along beside

the freight train before the accident in question. There is no showing the freight train crew had time to cut the train or necessity to do so before the passenger train was passing.

A person cannot recover for injuries sustained while voluntarily exposing himself to a danger which he either does or should fully realize and appreciate. Mc-Kee v. Patterson, 153 Tex. 517, 271 S.W. 2d 391. Under the theory of this case deceased was bound to have known of the passenger train if he could not see where he was going because he could not see through its light. One with knowledge of a railroad crossing is charged with knowledge of existing dangers there by reason of moving trains. Muniz v. Panhandle & Santa Fe Railway Company, Tex.Civ.App., 285 S.W.2d 809 (NRE).

It is stated in the case of Texas & N. O. R. Co. v. Compton, 135 Tex. 7, 136 S.W. 2d 1113 as follows:

"Another ground relied upon was the failure of the railroad company to use extraordinary means to give warning, such as to equip its freight cars with lights and have same burning at night, to equip its crossing with signal bells or lights or to have a watchman stationed thereat. Negligence cannot be based upon such omissions, for the crossing was not extrahazardous and therefore no duty was cast upon the railroad company to observe these extraordinary precautions. It would be difficult to conceive of a railroad crossing at which the hazards would be more obvious than at this one."

See also Missouri-Kansas-Texas R. Co. of Texas v. McLain, Tex.Com.App., 105 S. W.2d 206 (Com.App. opinion adopted by Sup.Ct.), as follows:

"It seems to be universally recognized that trainmen in charge of a train which has blocked a public crossing with an object which is easily dis-cernible, like a box car, have a right to assume that one traveling a highway and approaching the obstruction will adopt suitable lights and such a rate of speed as that he can bring his automobile to a stop before coming in contact with the obstruction, and consequently accidents by reason of an automobile driver running his car into a train on a crossing, whether standing or moving, cannot reasonably be foreseen and anticipated as a natural result of blocking the crossing. In addition to those cited above, the following are a few of the illustrative cases: Texas & N. O. Ry. Co. v. Stratton (Tex.Civ.App.) 74 S.W.(2d) 741; Wichita Valley Ry. Co. v. Fite (Tex. Civ.App.) 78 S.W.(2d) 714; Gage v. Boston Ry. Co., 77 N.H. 289, 90 A. 855, L.R.A.1915A, 363; Gallagher v. Montpelier Ry. Co., 100 Vt. 299, 137 A. 207, 52 A.L.R. 744; St. Louis-S. F. Ry. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A.L.R. 1110, and annotation; Philadelphia & R. R. Co. v. Dillon, 1 W. W. Harr. (Del.) 247, 114 A. 62, 15 A.L.R. 894, and annotation."

We are further of the opinion that there is insufficient evidence to show any negligence on the part of appellant or of any of its employees. It is stated in the case of Texas & N. O. R. Co. v. McMahan, Tex.Civ.App., 144 S.W.2d 1019 affirmed by Supreme Court in 138 Tex. 626, 161 S.W.2d 70, as follows:

"In view of the fact that appellee actually saw the train and called it to the attention of Jeffrey, and that each was very familiar with the crossing and its surroundings, having passed over it many times, and in view of the wide, open, straight and almost level highway upon which appellee was traveling at the time of the collision, we cannot permit this judgment to stand, based upon the alleged negligence of the Railroad Company in not having extraordinary methods of warning appellee and the driver of the car, Car-

roll Jeffrey, of the presence of the train upon the crossing. Texas & N.O.R. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 741; Texas & N.O.R. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 746; Tex. & N.O.R. Co. v. Berry, Tex. Civ.App., 74 S.W.2d 750; Texas & N.O.R. Co. v. Compton, [135 Tex.Sup. 7], 136 S.W.2d 1113."

As to appellant's points of error referring to answers to its defensive issues that the case should be reversed because the answers were wholly without support in the evidence, we consider these assignments be that there was no evidence to support such findings. These points of error as to the issues being wholly without support in the evidence deal with the speed the deceased was driving; deceased driving without keeping a proper lookout; that it was not negligence for deceased to continue to drive his car into such light when his vision of objects beyond the light was obscured; and that deceased did not fail to use ordinary care to observe either the crossarm, reflectorized signal, or the circular highway railroad crossing marker showing that he was approaching a railroad crossing. There is nothing in this record to show the speed that deceased was driving and the jury would not be authorized to hold he was driving too fast or he was not driving too fast. There is no evidence that deceased was keeping a proper lookout or what he was doing at the time, only that he ran into the freight train. The appellant having the burden of proof as to its defensive issues, and the appellees having the burden to prove their issues, the fact the jury was not authorized to hold the deceased was not negligent in these matters would not justify us in holding as a matter of law the deceased was guilty in these matters.

There were issues found by the jury that appellant was guilty of certain acts of negligence and was a proximate cause of injuries claimed. I am of the opinion the evidence is insufficient to support the findings of the jury as to any acts of negligence on the part of appellant or of any of its employees and for that reason I would reverse and remand.

DENTON, Chief Justice.

On April 13, 1963, appellee, Mrs. O. B. Williams, filed a remittitur of $6,750.00 in compliance with the suggestion of remittitur by this Court's decision of April 8, 1963. The judgment of the trial court will be reduced by the amount of such remittitur, and as so modified, the judgment of the trial court is affirmed.

Affirmed.