LEMMON, Judge.
These three consolidated suits for damages arose out of an accident in the Harvey Tunnel in Jefferson Parish, in which an ambulance driven by Clifton C. LeBlanc collided into the rear of a stalled automobile driven by Mrs. Gail M. Orgeron. The three suits were:
1. By Mrs. Orgeron and her husband against LeBlanc, Louis A. Muhleisen, d/b./a Kenner Funeral Home (owner of the ambulance) and their liability insurer.
2. By Orgeron’s subrogated collision insurer against the same defendants.
3. By Muhleisen and his subrogated collision insurer against the Orgerons and their liability insurer.
The trial court found that LeBlanc was negligent and Mrs. Orgeron was free from negligence, and rendered judgments accordingly in all three suits. LeBlanc, Muh-leisen and their insurer appealed, assigning that the trial judge erred in finding Le-Blanc negligent, in failing to find Mrs. Orgeron negligent, and alternatively in awarding excessive damages.
The Harvey Tunnel, through which the West Bank Expressway crossed under the Harvey Canal, consisted of four traffic lanes divided by a center barrier, with two lanes for travel in each direction.
Mrs. Orgeron testified that she changed from the right to the left lane of traffic while she was on the approach to the tunnel and was traveling at the speed of about 40 miles per hour. The posted speed limit was 45 miles per hour. Midway in the tunnel she was forced to reduce her speed because the first of two. cars in front of her was moving very slowly. When the slow moving car changed to the right lane, the car directly in front of her speeded up. As she attempted to increase her speed, her car stalled and then came to a complete stop just past the crest of the tunnel and about one car length onto the upgrade. She shifted the gear into “park”, put on her left directional blinker signal, and attempted to start the car. She heard the ambulance siren and saw it approaching, and seemingly without slowing down, the ambulance collided into the rear of her car.
LeBlanc testified that he was driving the ambulance at 40 to 45 miles per hour, destined for Charity Hospital with a violent patient who was being attended by a Westwego policeman. He slowed slightly as he entered the tunnel, which had light traffic. As he came to the point where the tunnel dips in the middle, he spotted Mrs. Orgeron’s vehicle on the upgrade, about 30 to 40 feet ahead of him. The car appeared to be stopped so he immediately applied his brakes, but skidded in an area where water stood in the road. The leak that caused this wet spot had existed in the tunnel for some time.
The trial court held that if LeBlanc was traveling at the speed he stated, he could have and should have observed the stalled vehicle in time to avoid the collision.
However, Muhleisen contends that the trial judge, finding the evidence on measurements and visibility lacking, visited the accident scene and made certain measurements and speed-distance determinations. The distance from the entrance to the crest of the dip at the mid-point in the tunnel, the time required to drive between these points at certain speeds, and the approximate distance from which one can *460 see the point of impact were all cited in the reasons for judgment. It is argued that only after this gratuitous supplying of the insufficient evidence did the trial judge conclude that LeBlanc was negligent.
A trial judge may certainly visit an accident scene to accomplish a better understanding of the testimony of the witnesses by viewing the described physical surroundings. This only becomes improper when the judge conducts tests at the scene in order to supply evidence and then bases his conclusions on that evidence. The conclusions of the trial judge must be based on the evidence produced at trial and not on post-trial data that he improperly develops at the accident scene.
Although the Reasons for Judgment in this case indicate that the conclusions were drawn from the cited personal observations, we nevertheless believe that the record independently supports the finding that the ambulance driver had adequate stopping distance after he saw the stalled vehicle or should have seen it in the exercise of due care.
By his own testimony LeBlanc has convicted himself of negligence. He struck a stalled vehicle in the rear, but admitted that there was nothing that obstructed his ability to see the Orgeron vehicle and that there were often stalled cars in the tunnel. Because the car appeared “just like it popped right in front of me”, LeBlanc was obviously not keeping a proper look out. The duty is imposed upon him to see what he should have seen, and had he in the exercise of ordinary care seen the stalled car while traveling at a reasonable speed, there is no reason why he could not have stopped in time to avoid the accident. If LeBlanc’s vision of the upgrade portion of the road was partially obstructed by the dip of the tunnel, his duty to exercise care was increased with the increased danger. Furthermore, the emergency nature of his mission did not excuse LeBlanc from his duty to exercise reasonable care under the circumstances.
We conclude that the record contains ample evidence on which to affirm the trial judge’s finding that LeBlanc was negligent.
We further agree that there was no evidence in the record of any negligence on the part of Mrs. Orgeron. Again, counsel argues an evidentiary point in that a written statement providing evidence of this negligence was improperly excluded from the record. The' statement, given to an insurance adjuster nine days after the accident by the ambulance passenger who was attending the patient, concerned an admission by Mrs. Orgeron immediately after the collision that she had pulled into the left lane after seeing the flashing ambulance light. It is argued that she thereby violated R.S. 32:125, which requires a motorist to drive to the right and stop upon the approach of an emergency vehicle sounding its siren.
When he testified at trial, the passenger only remembered that Mrs. Orgeron had stated that she was sorry her car had stalled. He recalled giving the written statement and identified it, but denied that his memory was refreshed after reading it. Counsel then offered the statement itself as “best evidence”, but now argues that it was admissible as “past recollection recorded”. Ijt was well established that the witness had no independent recollection of the relevant facts and circumstances, but that he once knew them and recorded them at a time shortly after the occurrence. Counsel argues that under these circumstances the writing is present evidence of facts once known but no longer remembered by the witness and is admissible.
The statement did constitute a record of past recollection and as such was admissible under the circumstances of this case. McCormick, Evidence, Ch. 31 (1954); III Wigmore, Evidence, Third Edition, § 735 et seq. (1940). However, the statement only raises an inference of conflicting statements made by Mrs. Orgeron immediately after the accident as to the point where she entered the left lane. The other *461 declaration was made to the investigating officer, who testified that she told him that she had changed lanes “a ways back” in the tunnel, which is relatively consistent with her testimony that the maneuver occurred on the approach to the tunnel.
Regardless of the exact point where she changed lanes, the positive evidence is clear that Mrs. Orgeron had stalled and had come to a complete stop when LeBlanc first saw her, negating any notion that she cut in front of him. In addition to his testimony that Mrs. Orgeron was stopped when he first saw her, LeBlanc also testified that he saw one or two cars ahead of him pass her on the right while she was stopped. The trial judge found as a fact that Mrs. Orgeron’s engine had stalled prior to the time she heard the ambulance siren or saw the flashing lights, and we find no manifest error in this determination, even after considering the excluded statement. We conclude that any changing of lanes by Mrs. Orgeron occurred long before the advent of the emergency vehicle and did not contribute to the accident. We further find her entirely free of negligence.
As to quantum, the main complaint is that the doctor’s testimony contradicts that of Mrs. Orgeron as to the nature and extent of her injuries.
The doctor, who had treated Mrs. Or-geron for many years, examined her in the hospital emergency room on March 9, 1969, the day of the accident. He found muscle spasm in the posterior neck and prescribed rest and muscle relaxant medication. He subsequently employed diathermy and ultrasound treatments. When the symptoms increased over a two month period, the doctor referred her to the hospital physiotherapy department for traction and daily diathermy treatments for approximately 15 days.
By mid-June her condition had improved, and she was primarily suffering from headaches. She was discharged on September 15 as asymptomatic, except for occasional headaches.
She returned about three months later with complaints of neck pain, headaches and difficulty in sleeping. Further medication was prescribed.
The following September she returned with complaints of continuing headaches. Additional testing, including x-ray of the skull, electroencephalogram and neurological examination, was negative.
Although Mrs. Orgeron described the headaches as more frequent and intense than did the doctor, the testimony of the doctor in itself convinces us that the trial judge did not abuse his discretion in awarding $3,500.00 for pain and suffering. The remainder of the damages were stipulated, including medical expenses in the amount of $319.13, travel expenses for medical care in the amount of $142.50, and the deductible amount of property damage in the amount of $100.00.
Accordingly, the judgment of the trial court is affirmed.
Affirmed.