299 So.2d 415 (1974)
A. B. TOEPFER
v.
Paul C. THIONVILLE.
No. 6274.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 1974.
*416 Robert M. Caswell, Kronlage, Dittmann & Caswell, New Orleans, for A. B. Toepfer, plaintiff-appellant.
Frank E. Lamothe, III, Martzell & Montero, New Orleans, for Paul C. Thionville, defendant and plaintiff in reconvention-appellee.
Before GULOTTA, BOUTALL and SCHOTT, JJ.
BOUTALL, Judge.
This is a suit arising out of a contract to build a concrete tennis court. The contractor, A. B. Toepfer, filed suit against the owner, Paul C. Thionville, for the balance due under the contract. Thionville answered and filed a reconventional demand against the contractor contending that the tennis court was totally unusable due to faulty construction, that it was necessary to be removed, and asked for a return of the deposit paid on the contract as well as damages. In response to this, the plaintiff filed answer to the reconventional demand and brought third party proceedings against Eduardo Lucotti, an architect who presented the plans for the tennis court and assisted Thionville in handling its construction. The trial court rendered judgment in favor of the defendant owner dismissing the contractor's suit and awarding the owner return of the deposit plus damages on his reconventional demand. The third party proceedings were dismissed. From this adverse judgment, the contractor, Toepfer, appeals. It is the contention of the contractor that he did the work demanded in a competent, workmanlike fashion, and has performed all of the obligations under the contract with the exception of a slight finishing step, which he was prevented from doing by the owner. If there are any faults with the tennis court as constructed, these faults are due to the inadequacy of the plans and specifications that he was furnished and that he bid upon. He relies upon provisions of R. S. 9:2771 which provides that the contractor is not liable for destruction, deterioration or defects in the work, done according to plans furnished him, which he did not make or cause to be made, if the destruction, etc. was due to the fault or insufficiency of the plans or specifications.
As opposed to this, the owner contends that the plans were sufficient, but that the deterioration and defects are due to the improper workmanship and lack of expertise of the contractor. He relies upon the provisions of Louisiana Civil Code Articles 2762 and 2769 to the effect that a contractor is liable for damages for poor workmanship and noncompliance with his contract.
As we view the matter, the issue is basically a factual dispute. There was a contract between the parties based upon plans for a tennis court prepared by a friend of Lucotti's for a client in Picayune Mississippi. It is apparent that these plans and the terms of the contract itself do not supply all of the specifications necessary to the construction of a tennis court in accordance with the desires of the owner. It is equally apparent that there were attempts to orally agree on a number of particular specifications and that the breach of these oral agreements forms the basic issues here. We find it unnecessary to recite at length the entire testimony of the witnesses, except that we must note that in most cases there is a sharp conflict between the testimony of the witnesses for plaintiff and the witnesses for defendant. Instead, we shall examine each point of controversy.
The first point of controversy is the color of the tennis court. The plans merely specify a green color, and later it was agreed between the parties that the color green should be that color selected by the owner. Accordingly, the owner, contractor and architect met at the site before the top layer of concrete was laid and *417 when the first concrete truck arrived, it was halted and the color was added to the concrete mix until the precise color was determined by the owner from samples poured from the truck. There is considerable dispute between the parties as to whether it was stated by the contractor that the concrete would dry lighter or darker than the sample, but we do not find this to be important. As we view it, the problem here is not that there is a lighter shade of green than desired, but that there is no uniform shade of green. It soon became apparent after the work was finished that the surface was mottled in appearance, that is, that there were patches of dark green, lighter green, and in some cases no green at all. The problems that a contractor may experience in achieving the precise shade of coloring desired, as well as the bleaching effect on that color by the elements in an exposed concrete slab can readily be appreciated. However, the burden of proof is on a contractor to satisfactorily explain this mottled effect.
While the contractor and his witnesses testify that coloring can be properly mixed by pouring it into the concrete truck at the job site, there is equivalent testimony produced by the owner to the contrary. Decisive of this issue, we believe, is that the specific directions for the use of this coloring material is given by its manufacturer on the cartons of coloring. These directions provide for mixing with the dry cement before the concrete mixture is prepared in order to achieve uniform results. The facts further show that insufficient coloring was used, perhaps because of the fact that the coloring was not readily obtainable in sufficient quantities on the date of first pouring, and the pouring had to be partly continued to the next day when more could be obtained.
A considerable dispute arose over the value of photographs taken at a later date which purported to show the coloring of the slab. In an effort to determine if the photographs indicated the actual color, the trial judge personally inspected the premises some time after trial and concluded as follows:
"The Court personally inspected the tennis court to see if the surface was actually colored as the photographs indicate. These photographs, "D-1-A" through "D-1-L", show the court to advantage. The coloring and surface are even more inconsistent than the pictures are able to show."
We do not think it proper for the trial judge to make a personal inspection of the premises without the knowledge of the attorneys (or presumably with the knowledge of one party, since the tennis court is on the premises of the owner's residence) at some period up to ten months post trial. Especially is this true when one of the issues is the deleterious effect of the climate upon an exposed concrete slab. It approaches the prohibited activity denounced by us in the case of Phillips v. Ursin, 280 So.2d 243 (La.App.1973). However the stated purpose of the trial judge was only to seek to determine if the photographs were accurate portrayals of the scene, and for this reason, we conclude that his visit and his comments about it should be simply disregarded by us in reaching a determination in this case. We find no reversible error and we refer to a similar situation in the case of Orgeron v. Muhleisen, 256 So.2d 458 (La.App.1972).
We conclude that the tennis court was improperly colored and not in accordance with the standards of good workmanship required in the execution of the contract.
The next point of contention is that the finish of the cement slab was not contained in the specifications. The evidence discloses that there was an oral agreement between the parties at the time of laying the slab that there was to be a light broom finish applied. The evidence preponderates that the finish on this slab is not a light broom finish and it is unacceptable for use as a playing surface for tennis. *418 The surface is replete with rough spots and various textures of smoothness. Some attempt was made to remedy this by grinding some sample spots with a terrazzo machine to achieve the desired finish, but it was decided by the owner that none of these samples were acceptable to him, and the surface was left in its original condition. The contractor has offered no acceptable explanation why he could not and did not afford the desired finish except to say that he did not know what was wanted, and hence had no responsibility for the finish. However his own testimony shows that oral agreement was reached, and the record shows that this agreement was breached by the contractor.
The next point of contention are certain cracks which have appeared in the slab. These cracks are of two varieties. Some appear to go all of the way through the slab and indicate some sort of structural failure. The others are cracks ranging from hairline cracks to larger cracks which do not go through the entire slab. The original plan called for a four inch concrete slab, using highway mesh for reinforcement. These plans were changed by oral agreement and the contractor proposed to install a base slab of 3½ inches using a different type of mesh, to be topped with a slab of 1½ inches using a different mix in which the color was to be added.
Significantly, the contractor's principal contention that LSA-R.S. 9:2771 insulates him from liability because the plan furnished to him by the owner was defective had no application to this aspect of the case. The original plan called for one four inch slab but he requested and secured a change to two separate slabs; thus on this aspect of the case he was furnished with no plan by the owner but provided, worked from and warranted his own plan.
We do not find a preponderance of the evidence to show that structural cracks are due to improper performance in the fulfillment of this part of the contract. However we do conclude that the surface cracks are due to improper performance and poor workmanship. The testimony convinces us that there was poor adherence of the top coat to the basic slab, and this was a major cause of the cracks. The delay in laying the topping onto the basic slab, as well as improper curing, has caused a situation wherein the expansion and contraction of the two slabs are not coordinated as one, and hence there is an apparent deterioration of the tennis court, not to be expected in a slab of this nature.
For the reasons above discussed, we are of the opinion that the trial judge was correct in concluding that the entire slab would have to be removed as it was of little or no value in its present condition. Since the defects were due to the poor workmanship and improper performance of the contractor in accomplishing his obligations under the contract, the cost of these damages are properly assessed against him.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.