349 So.2d 431 (1977)
Irene OWENS
v.
Jessie W. THORNTON and United Transport, Inc.
No. 8247.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 1977.
Rehearing Denied September 8, 1977.
*432 Bradford R. Roberts, II, Ganucheau & Allmand, New Orleans, for Irene Owens, plaintiff-appellee.
William W. Miles, Porteous, Toledano, Hainkel & Johnson, New Orleans, for Jessie W. Thornton and United Transport, Inc., defendants-appellants.
Before LEMMON, BOUTALL and SCHOTT, JJ.
BOUTALL, Judge.
Plaintiff filed suit for damages arising from an accident in which the plaintiff pedestrian was struck and run over by a tractor-trailer truck driven by Jessie W. Thornton and owned by United Transport, Inc. After trial judgment was rendered for plaintiff and defendants have appealed.
The accident occurred on March 25, 1974 at the intersection of N. Miro Street and Almonaster Avenue in the City of New Orleans. Defendant Thornton was driving a large tractor-trailer "rig", of the type used to transport automobiles in a steel frame being about sixty feet in length, on N. Miro Street, intending to make a right turn onto Almonaster Avenue. Thornton testified that in order to make the turn from the narrow N. Miro Street he pulled his "rig" into the left lane of N. Miro Street prior to stopping at the stop sign facing him at the intersection. Thornton looked left and right and saw the plaintiff standing on the corner to his right on the same side of Almonaster as he was stopped; the plaintiff was watching traffic passing on Almonaster. When traffic was clear Thornton began the long right turn onto Almonaster from the left lane of N. Miro.
Thornton testified that it took approximately 1½ minutes to make the turn, and when he was about 90% through the turn, he looked into his right rearview mirror and saw the plaintiff sitting on the pavement in the middle of the street, about a foot from the side of the trailer and a couple of feet from the rear wheels of the trailer. Upon seeing Mrs. Owens' predicament, Thornton stopped his truck.
The plaintiff's version of the accident is that she was standing on the corner waiting for traffic to pass on Almonaster Avenue. While standing on the corner, the "rig" made a right turn and passed over or very near to the corner where she was standing. The vertical support bar of the right front of the truck cab struck her left arm, spun her around and knocked her into the street. As she fell, the rear wheels of the tractor passed over both of her feet.
Lloyd Broussard was nearby at the time of the accident. Broussard did not see the accident, but ran to the scene when he heard Mrs. Owens' screams and found her sitting near the middle of Almonaster Avenue facing away from the trailer, although she was only about a foot from the side of the trailer.
Mrs. Owens was taken to Southern Baptist Hospital where it was discovered that she had a broken left humerus and multiple back fractures of both feet. We do not enter into a discussion of the damages suffered by the plaintiff because appellants do not question the award of damages on appeal, but instead defendants focus their appeal primarily on the issue of liability.
Defendants contend that the trial court erred in not finding the plaintiff contributorily negligent and not finding that the *433 plaintiff failed to prove her case by a fair preponderance of the evidence.
Defendants contend that the plaintiff was not standing on the corner at the time she was struck by the tractor-trailer, but instead she was crossing the street. To support this contention, defendants argue that it was impossible for the tractor to drive over the curb where plaintiff alleges to have been standing, and further, the location of the plaintiff after the accident, the middle of Almonaster Avenue, necessarily leads to the conclusion that the plaintiff was in the street and not on the curb. Thus, the defendants argue that the plaintiff was contributorily negligent for failing to see the truck which she should have seen while crossing the street.
There were no eye witnesses to the events leading up to the accident other than the plaintiff and defendant. However, the trial judge, in his reasons for judgment, found the issue to be something other than credibility when he said:
". . . The testimony is such as to make it impossible for the Court to determine with accuracyand without speculationjust how the accident did happen. However, the question for determination is whether or not the driver of the truck was negligent, and whether or not Mrs. Owens contributed to the accident in any manner." * * *
The trial judge then found that the defendant driver should have kept the plaintiff in his view, but that he had his eyes focused straight ahead in order that he could make the big turn without hitting poles in the neutral ground. Additionally, the trial judge stated that the plaintiff may have avoided the accident by moving back from the curb or the point where she was struck, but if she was negligent in that respect it was not the proximate cause of the accident. As the judge said in his reasons:
". . . She had to have had her eyes focused on the street she was to cross and had no reason to know that the truck was to make a turn rather than proceeding straight across Almonaster Street."

* * * * * *
Our review of the record convinces us that the trial judge was correct in determining that the driver of the truck was negligent in the manner in which he made the turn without regard to the safety of Mrs. Owens. The truck driver's own testimony supports such a determination:
"Q. What happened? What were you looking at during the time that elapsed from the time you saw Mrs. Owens standing on the corner until the time you saw her down alongside of your trailer?
"A. Where was I looking at?
"Q. Yes.
"A. Well, on the neutral ground, on the righthand side of North Miro they have a telephone pole and a light standard. It's so close when you make the turn you only have about two inches between to get that tractor around there. You have to watch that. I watched the poles. When I got around the poles then I looked into the rear view mirror and that's when I saw Mrs. Owens."
The truck driver was well aware of the difficulties in maneuvering the large rig in narrow confines. It was necessary that he pull out into the intersection some distance and then make a sharp right turn in order to give the trailer as much clearance as possible to keep it from rolling across the curbing and sidewalk to his right. An unwary pedestrian or one not familiar with the turning propensities or turning radius of such a large rig might thus be caught unaware by the rig encroaching into an area normally safe from danger by a right-turning vehicle of smaller dimensions and turning radius. A vehicle making a right turn at an intersection owes a legal duty of care to a pedestrian properly crossing the street into which the motorist intends to turn. Collins v. Toye Bros. Yellow Cab Co., 183 So.2d 396 (La.App. 4, 1966). This duty is heightened when the right-turn maneuver must be accomplished in an unusual manner of which the pedestrian may *434 be unaware. The trial judge found that the truck driver should have stopped to allow the pedestrian to proceed or at least keep her in view to insure her safety, and we agree.
The issue of contributory negligence is a greater problem. We are convinced from the record that Mrs. Owens was not standing on the sidewalk when struck. The physical facts disprove this. We conclude that she had departed the sidewalk in order to cross the street. When the traffic on Almonaster cleared, she had a right to cross Almonaster and rely upon turning traffic yielding. Of course, she cannot be heedless of turning traffic without being contributorily negligent. But in this case, the truck started out straight ahead (and if the driver is to be believed, from the far side of N. Miro) as if to go straight across Almonaster just as she was going. Thus she would have no warning that she was in peril until the truck made its sharp right turn maneuver encroaching into her passageway. At that point in time she was properly crossing the intersection in the crosswalk and had the right to be in the position she was occupying.[1] When the emergency situation was created by the driver moving sharply to his right without yielding to crossing pedestrians, she was unable to extricate herself from the peril of the emergency thus created. We find no contributory negligence.
Defendants-appellants also contend that the trial court erred in refusing to allow certain demonstrative evidence offered by the defendants. The defendants attempted to introduce certain photographs and movies which they claim would prove that it was impossible for the accident to happen at the spot and in the manner suggested by the plaintiff. Opposing counsel objected on the ground that the tractor and trailer used in the re-enactment were not the same as the tractor and trailer involved in the accident and that too many variables were involved for the re-enactment, or experiment, to have any value.
The determination of whether motion pictures are admissible is largely within the discretion of the trial court. Ashley v. Nissan Motor Corp. in U. S. A., La.App., 321 So.2d 868 (1975); Carvell v. Winn, La. App., 154 So.2d 788 (1963). The trial judge stated that he felt that it made "A lot of difference" if the photographs and movies proffered showed a shorter tractor-trailer than the one involved in the accident and he also noted the numerous variables involved in making the turn in any re-enactment. We cannot say the trial judge abused his discretion in view of the major differences between the tractor-trailer involved in the accident and the one in the proffered evidence.
The final issue raised by appellants in this appeal is whether the trial judge made critical conclusions on matters outside of the testimony. Specifically, appellants complain that the trial judge conducted his own inspection of the location of the accident and partially based his judgment upon such inspection.
A trial judge may visit an accident scene to accomplish a better understanding of the testimony of the witnesses by viewing the described physical surroundings, but the conclusions of the trial judge must be based on the evidence produced at trial and not on post-trial data that he improperly develops at the scene of the accident. Orgeron v. Muhleisen, La.App., 256 So.2d 458 (1972). However, there is nothing in the record to indicate that the trial judge did visit the scene or that he based his conclusions upon such a possible visitation. As previously stated, relying on the record alone we find sufficient reason to maintain the judgment of the trial court.
Accordingly, for the foregoing reasons, the judgment appealed is affirmed.
AFFIRMED.
NOTES
[1] For definition of crosswalk, see Code of the City of New Orleans, Section 38-17. For pedestrian's right of way in crosswalk, see Section 38-176.