419 So.2d 308 (1982)
Virginia HANNEWACKER, Petitioner,
v.
CITY OF JACKSONVILLE BEACH, Respondent.
No. 61062.
Supreme Court of Florida.
July 22, 1982.
Rehearing Denied October 5, 1982.
*309 Steven E. Rohan of Vickers & Rohan, Jacksonville, for petitioner.
C. Wayne Alford and T. Edward McClamma of Sinoff & Alford, Jacksonville, for respondent.
McDONALD, Justice.
The First District Court of Appeal has certified that its decision in Hannewacker v. City of Jacksonville Beach, 402 So.2d 1294 (Fla. 1st DCA 1981), is in direct conflict with Leon v. City of Miami, 312 So.2d 518 (Fla. 3d DCA 1975). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Mrs. Hannewacker alleges that she was injured in a fall caused by the chipped edge of a street curb. There was no evidence that the city had actual knowledge of the defective curb, nor was there direct evidence that the condition had existed for such time that the city should have known of it and corrected it.[1]
Photographs of the broken curb and of some nearby repair work were introduced into evidence with the plaintiff contending that these, standing alone, provided a basis for an inference of constructive notice of the defect. The nearby repair was identified as having been there for two years, but *310 no testimony connected that condition with the broken curb. The trial judge reserved ruling on the city's motion for directed verdict, but, after the plaintiff's verdict was returned, granted the city's motion, finding that the photographs were insufficient evidence to raise an inference as to the length of time the defect had existed. The first district, relying on City of Jacksonville v. Hampton, 108 So.2d 768 (Fla. 1st DCA 1959), affirmed the trial court and certified conflict to this Court.[2] We approve the decision of the district court, but modify its holding.
In Leon v. City of Miami, 312 So.2d 518 (Fla. 3d DCA 1975), the plaintiff was injured when she caught her foot in a hole in a sidewalk. The only evidence presented at trial concerning the length of time that the hole had existed was a photograph of the scene. In affirming the award to the plaintiff the third district held that the photograph, standing alone, constituted tangible evidence of the scene sufficient to raise an inference as to the duration of the defect.
In City of Jacksonville v. Hampton the plaintiff slipped on a damaged step at the city hall. The only evidence of the length of time that the defect had existed was a photograph of the defective step. After judgment for the plaintiff, the city appealed. The first district reversed, holding that a photograph is only admissible to explain and demonstrate a witness' testimony, not to form the basis for an inference as to the duration of the defect.
There are two separate theories concerning the admissibility and use of photographs as evidence. One is referred to as the "pictorial testimony theory of photographs."[3] Under this theory a photograph is admissible as a nonverbal mode of expressing a witness' testimony, a substitute for a description in words. It does not recognize the picture as having independent evidentiary rule. The other "silent witness" theory recognizes that, once properly authenticated, the photograph has independent evidentiary value and can speak for itself.[4]
This Court recognized a limited use of photographs over ninety years ago in Adams v. State, 28 Fla. 511, 10 So. 106 (1891). In determining the admissibility of a map this Court stated:
A map, plan or picture, whether made by the hand of man or photography, if verified as a true representation of the subject about which testimony is offered, is admissible in evidence to assist the jury in understanding the case. They are frequently formally admitted in evidence, and in so far as they are shown to be correct, are proper for the consideration of the jury, not as independent testimony, but in connection with other evidence, to enable the jury to understand and apply such evidence.
Id. at 538, 10 So. at 113. See also City of Miami v. McCorkle, 145 Fla. 109, 199 So. 575 (1940).
Since Adams this Court has permitted inferences and deductions to be drawn from photographs. In Goff v. Miami Transit Co., 77 So.2d 636 (Fla. 1955), the plaintiff was injured in an automobile collision. The trial judge entered a directed verdict for the defendant and Goff appealed. This Court reversed, stating:
Diagrams and photographs, in fact physical evidence, generally may speak so loud that one will not hear the witnesses. We have examined the oral and the physical evidence in this case and we cannot escape the conclusion that the trial court acted too hastily in taking the case from the jury. Appraisal of the weight of the evidence is always a jury question and in this case the oral and physical evidence required deductions from diagrams, photographs and other evidence, that should have been resolved by the jury instead of the court.
Id. at 637.
In Bess v. 17545 Collins Avenue, Inc., 98 So.2d 490 (Fla. 1957), the plaintiff complained *311 that a one-and-a-half-inch metal pipe running across a walkway caused him to trip and fall. On the basis of two photographs the trial judge entered a summary judgment for the defendant, finding that the hazardous condition was obvious. This Court reversed the trial court, stating:
It is clear to us that reasonable men might justifiably make different inferences and deductions and reach different conclusions from these photographs. Where this appears it is the province of the jury to make such deductions and inferences. See Goff v. Miami Transit Co., Fla. 1955, 77 So.2d 636. In such cases it cannot be said that there is no genuine issue of material fact to be determined.
Id. at 492.
While these decisions concern inferences and deductions about the physical qualities of the subjects in the photographs, only those cases listed by the district court in the instant case[5] have dealt expressly with the abstract quality of time. The normal procedure for entering evidence of the duration of a defect is through testimony of a witness with personal knowledge of the duration, or through the opinion of an expert witness. This is the preferred and safer procedure to follow. The rule of the district court in this case requiring live testimony in addition to a photograph to support the critical element of time is also preferred.
We are persuaded, however, that a properly admitted photograph can act as a silent witness and that there are some limited situations where a photograph standing alone can provide a basis for an inference of time. We recognize that several problems may arise when photographs are used for this purpose. The science of photography has developed significantly since our decision in Adams. Because of present technology, photographs can often demonstrate, preserve, and transmit a message far better than any human witness. There remains, however, the ability to affect the image of that message through technical developments in the field. The perspective from which the photograph is taken, the type of camera and film used, the quality and focal length of the lenses used, the lighting, the use of filters, and the development of the final print or transparency can result in distortion and misrepresentation. See 1 C. Scott, Photographic Evidence §§ 71-100 (1969). The effect of such distortion or misrepresentation on the physical characteristics is usually minimal but the effect on the abstract quality of time can be misleading. Admissibility, however, is a question for the trial judge. Once authenticated and admitted, questions of possible distortion go to the weight which the photograph is given. 3 J. Wigmore, Evidence § 792 (J. Chadbourn rev. 1970).
Another concern with admitting a photograph as substantive evidence is that it cannot be cross-examined. We do not consider this to be a problem because the witness whose testimony establishes the foundation can be extensively cross-examined by the opposing party. Once a foundation is established, the photograph gains a certain degree of authenticity and reliability, and we perceive no compelling need for further cross-examination.
If the photograph portrays a condition that has some distinguishing feature which clearly shows that the defect has existed for a long period of time,[6] it may afford the jury a basis to infer that a significant period of time has passed. If *312 the photograph is ambiguous on this point and what is shown makes it questionable whether a significant period has passed, the jury would necessarily be required to indulge in speculation to determine the duration of the condition. In such a case the photograph without live testimony is insufficient. This is no different than if a witness testifies to the condition of a defect at the time of an accident and there are no distinguishing features or other testimony to indicate its duration. In such instance the trial judge is entitled to direct a verdict on the question of constructive notice. Since that is the law in effect for testimonial evidence, it should be the same when the witness is a photograph. But there are photographs which may constitute tangible evidence of the scene of an accident sufficient to raise an inference as to the length of time the defect was present. While this depends entirely on the condition sought to be depicted, the photograph must clearly demonstrate that a significant period of time has passed.
In the present case the photographs show the chipped curb and the surrounding area. The exposed concrete surface of the chipped area is lighter than the surrounding areas, but there is no discoloration or unusual sign of wear on the surface. From these pictures the jury could only guess or speculate as to how long the defect existed. The trial judge found that the photographs were insufficient to raise an inference as to the duration of the defect.
Petitioner further contends that even without the inference from the photographs there was sufficient evidence to infer constructive notice. The photographs showed two footprints in the concrete surface of a street patch just a few feet from the chipped curb. In her closing argument Mrs. Hannewacker alleged that since the footprints had existed for at least two years, the chipped curb could have existed for a significantly long period also. However, there is no evidence linking the footprints' existence to the curb defect, and whether the city negligently allowed the prints to remain is not related to the city's alleged negligence for the present defect. The footprints provide an insufficient basis to infer constructive notice.
Finding no evidence of the length of time the defect existed, the trial court correctly directed a verdict for the city. The result reached by the First District Court of Appeal is approved as modified.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, SUNDBERG and EHRLICH, JJ., concur.
NOTES
[1] In City of St. Petersburg v. Roach, 148 Fla. 316, 318, 4 So.2d 367, 368 (1941), we stated:

It is written in McQuillan Municipal Corporations, Second Edition, Volume 7, page 163, that one may not recover for injuries resulting from defective sidewalks unless it be shown that the injury was directly traceable to the defect; "that the sidewalk was not reasonably safe;" and that the flaw had been there a sufficient length of time for the municipal corporation to have discovered it by the exercise of reasonable care and to have repaired it.
[2] 402 So.2d at 1296.
[3] 3 J. Wigmore, Evidence § 790 (J. Chadbourn rev. 1970).
[4] Id.
[5] City of Jacksonville v. Hampton; Leon v. City of Miami.
[6] Such as in Clark v. City of Berkeley, 143 Cal. App.2d 11, 299 P.2d 296 (1956) (sidewalk was dilapidated and fragmented with grass and weeds growing through the cracks); Van Dorn v. City & County of San Francisco, 103 Cal. App.2d 714, 230 P.2d 393 (1951) (settled and sunken areas in paving stones could not have arisen suddenly); Word v. City of St. Louis, 617 S.W.2d 479 (Mo. App. 1981) (jury could have reasonably inferred that the defect had been present long enough for the metal to rust and the cracks to appear); Taylor v. New York City Transit Auth., 48 N.Y.2d 903, 400 N.E.2d 1340, 424 N.Y.S.2d 888 (1979) (the irregularity, width, depth and appearance of the defect apparent from the concrete surface exhibited such a length of time).