Rosario LOPEZ, indiv., et al.,
Appellants,

v.

FOREMOST PAVING, INC., et
al., Appellees.

No. 04–88–00133–CV.

Court of Appeals of Texas,
San Antonio.

June 20, 1990.

Rehearing Denied Sept. 12, 1990.

Timothy Patton, Pasqual & Pozza, San Antonio, for appellants.

Gloria Leal, Asst. Atty. Gen., Highway Div., Austin, Steve Hastings, Law Office of Guy Allison, Ronald B. Brin, Brin & Brin, Fred E. Weathered, Law Office of David J. Dunn, Tom C. Wheat, Kleberg & Head, Corpus Christi, for appellees.

Before CADENA, C.J., and PEEPLES and BIERY, JJ.

## OPINION

BIERY, Justice.

The Lopez family appeals from a take-nothing judgment in their action to recover damages arising from a head-on collision between their family pickup truck and a tractor-trailer rig. We reverse and remand this cause to the trial court.

The accident occurred on a portion of U.S. Highway 281 being resurfaced by Foremost Paving, Inc. and Motheral Contractors, appellees, in accordance with their contract with the State Highway Department.[1]

Salome Lopez, the driver of the family's vehicle, was pronounced dead at the scene of the accident. Adan, 14 months old at the time, suffered severe spinal cord damage. As a result, he is permanently paralyzed from the waist down and has only a minimal ability to use his hands and arms.

Sharply conflicting evidence about the accident was presented by the plaintiffs and defendants at trial. The jury deliberated for more than four days before reaching a verdict.

We will outline the evidence which was presented at trial. First, plaintiffs' witnesses testified that Salome Lopez was awake at the time of the collision while defendants' witnesses gave opinions that he was asleep or inattentive. Plaintiffs' accident reconstructionist Ed Martinez, relying on a computer analysis and the physical and testimonial evidence, testified that Salome Lopez was not asleep, but was disoriented at the time of the accident. Defense accident reconstructionist Bill Nalle's testimony concluded that Salome Lopez had drifted off to sleep or was inattentive at the time of the collision.

Second, plaintiffs' experts testified that temporary center striping with which Foremost Paving marked the highway during the paving project was inadequate in light of the heavy fog which frequently covered that portion of the road. Defendants' witnesses testified that the temporary striping was adequate because it met the minimum standards set by the federal government. On cross-examination, the defendants' experts admitted that the minimum standards applied to normal conditions and that the existence of heavy fog was a hazardous rather than a normal condition. Supervisory personnel for the defendants admitted that they knew that the site of the accident was frequently covered by heavy fog.

Third, plaintiffs' witnesses testified the fog the morning of the accident was so thick that the striping was invisible, while some defendants' witnesses testified the striping was visible in spite of the fog. The driver of the tractor-trailer rig which struck the Lopez vehicle testified that he had trouble seeing the center stripe due to the fog or could not see the stripe at all. The police officer who arrived at the scene approximately one hour after the accident testified that the fog covered the "construction ahead" signs.

Fourth, there was conflicting testimony from plaintiff and defense witnesses as to the position of the Lopez vehicle in relation to the temporary center striping of the roadway at the time of impact.

Plaintiffs' theory of liability urged that defendants were negligent in failing to use adequate temporary striping and failing to warn and to otherwise take sufficient precautions to protect the safety of motorists while the roadway was being resurfaced, particularly in light of defendants' knowledge that the area was frequently enshrouded in fog. Plaintiffs contended that defendants' negligence proximately caused the head-on collision between plaintiffs' vehicle and the tractor-trailer rig. The jury failed to find that defendants were negligent.

On appeal, plaintiffs contend that they are entitled to reversal and remand for a new trial for the following reasons:

1) the introduction of six exhibits which were not timely produced in response to discovery requests;

---

1. For prior history of the litigation of this case, see *Lopez v. Foremost Paving, Inc.,* 699 S.W.2d 232 (Tex.App.—San Antonio 1985), *rev'd and remanded,* 709 S.W.2d 643 (Tex.1986).

2) the inadequate and confusing reading back of testimony of a liability witness during jury deliberations; and

3) alleged improper questions propounded by one of defendants' counsel.

We predicate our reversal on appellant's point of error number one, which complains of the admission of defense exhibits in violation of discovery rules.

The background of this litigation pertinent to point of error one shows that during the discovery process, plaintiffs asked defendants to produce all documents on which defendants intended to rely at trial to establish defenses or to rebut the plaintiffs' case. More than four months before the second trial, plaintiffs served separate production requests on defendants to discover all materials prepared by or for defense experts:

Document Request No. 5:

All documents and tangible things including all tangible reports, physical models, compilations of data and other material prepared by or for an expert in anticipation of the expert's trial and deposition testimony, specifically to include but not limited to all exhibits offered at the first trial of this suit which will also be used or relied upon by an expert at the second trial.

In response, each defendant stated that plaintiffs had already been provided with all materials that defense experts had prepared for use at trial and that nothing new was in the possession of defendants.

Ten days prior to trial and three days prior to the motion in limine hearing, defendants provided plaintiffs with a copy of a videotape prepared by defendants' expert accident reconstructionist Nalle. Additionally, at trial during Nalle's testimony, defendants offered into evidence five exhibits that had never been previously provided to plaintiffs. These exhibits were engineering drawings which were produced during trial after plaintiffs' experts had testified and left town. Thus, these exhibits were never evaluated by plaintiffs' experts.

 To obtain reversal of a judgment based upon error of the trial court in ad-

mission or exclusion of evidence, the following must be shown:

1) that the trial court did in fact commit error; and 2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Bridges v. City of Richardson,* 163 Tex. 292, 354 S.W.2d 366, 368 (1962); TEX.R. APP.P. 81(b)(1).

 In addressing the threshold question of whether error was committed, we first look at the discovery rules contained in the Texas Rules of Civil Procedure and their goals. TEX.R.CIV.P. 166b, 215(5). The purpose of the rules is to encourage full discovery of the issues and facts prior to trial so that the parties can make realistic assessments of their respective positions in order to facilitate settlement and to prevent trial by ambush. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989); *Gutierrez v. Dallas Indep. School Dist.,* 729 S.W.2d 691, 693 (Tex. 1987). Noncompliance with discovery rules is a grave violation for which the Texas Supreme Court has provided sanctions which in an appropriate case may include dismissal of the action with prejudice or rendition of a default judgment against the disobedient party. TEX.R.CIV.P. 215(2)(b)(5). Subsection 6 of Rule 166b imposes a duty to supplement a party's responses to discovery requests at least 30 days before trial when previously undisclosed material is to be offered at trial. When a party improperly fails to timely supplement a discovery request, the nondisclosed evidence may not be presented at trial. TEX.R.CIV.P. 215(5); *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297 (Tex.1986); *Gutierrez,* 729 S.W.2d at 694. Such undisclosed evidence is admissible only if the trial court finds that good cause exists for allowing the admission. TEX.R.CIV.P. 215(5); *Yeldell v. Holiday Hills Retirement & Nursing Center, Inc.,* 701 S.W.2d 243, 246 (Tex.1985). The burden of establishing good cause is on the party offering the undisclosed evidence, and good cause to allow the evidence must be shown in the record. TEX.R.CIV.P. 215(5); *Gee,* 765 S.W.2d at 396; *E.F. Hutton & Co. v.*

*Youngblood,* 741 S.W.2d 363, 364 (Tex. 1987). Documentary or testimonial proof, as opposed to mere argument of counsel, must be supplied to sustain the burden of showing good cause. *Garcia v. Allen,* 751 S.W.2d 236, 238 (Tex.App.—San Antonio 1988, writ denied); *Braniff v. Lentz,* 748 S.W.2d 297, 300 (Tex.App.—Fort Worth 1988, writ denied); *Walsh v. Mullane,* 725 S.W.2d 263, 264 (Tex.App.—Houston [1st Dist.] 1986, no writ). With one minor exception which will be discussed below, there is no evidence that the defense expert, who assumed the identical role in the first trial of this cause in 1983, could not have produced the exhibits well within the discovery timetable.

The trial court in this case made no specific finding of good cause. A review of the record discloses that the trial court did not explain why it admitted the exhibits prepared by the experts which failed to conform to discovery rules, or why it admitted the videotape which was not timely disclosed to the plaintiffs.

■ The videotape simulated defendants' version of the accident. Toy trucks depicted the two vehicles' approach from opposite directions. The film showed that the Lopez vehicle veered over the highway's center stripe as the tractor-trailer rig drew near; a head-on impact demolished the left front portion of the pickup truck.

Plaintiffs' motion in limine to exclude the video was denied and the video was subsequently admitted into evidence. The defendants argue on appeal, without having raised the point in the trial below, that good cause existed to admit the final thirty seconds of the video under the rationale that defendants were surprised by its contents. The defendants urge that the need to rebut surprise testimony can suffice as good cause. We have studied the authorities cited by the defendants for this proposition, and find them to be inapposite. *Ellsworth v. Bishop Jewelry and Loan Co.,* 742 S.W.2d 533, 534 (Tex.App.—Dallas 1988, writ denied); and *Gannett Outdoor Co. of Texas v. Kubeczka,* 710 S.W.2d 79, 84 (Tex.App.—Houston [14th Dist.] 1986, no writ), both involve situations in which the trial court permitted witnesses to testify during trial to rebut surprise trial testimony which dealt with subjects which could not have been anticipated. In the case before us, the defendants argue that the testimony of plaintiff's expert Martinez surprised defendants expert Nalle in the sense that he did not know about the testimony until Martinez was deposed two weeks before trial. In the cited authorities, the "surprise" occurred in the midst of trial and the very subject of the testimony could not have been anticipated. In our case, the testimony in question was provided to defendants prior to trial and dealt with the same collision issues which had been thoroughly analyzed in the previous trial of this cause and throughout the pretrial phases of this litigation.

■ We are not persuaded that Martinez' testimony amounts to evidence of good cause justifying the violation of the discovery rules as they applied to the concluding portion of the videotape. Further, it is uncontroverted that defendants failed to produce any evidence that the remainder of the video could not have been produced long beforehand. As the burden of establishing good cause is upon the party offering the evidence, and as good cause must be shown in the record, we conclude that the admission of the videotape was error.

■ On appeal, defendants did not argue that good cause justified their failure to produce the remaining visual exhibits, which were professionally prepared engineering drawings. Instead, defendants rely on TEX.R.CIV.EVID. 611(a), which states that the trial court shall exercise reasonable control over the mode of presenting evidence in order to achieve effective presentation for the attainment of the truth and to avoid needless consumption of time. Defendants cite no authority which employs this rule as a justification for a party's failure to supplement discovery requests, and we have found none.

■ At the trial court level, the defendants had attempted to defend their discovery violations by claiming that the engineering drawings did not surprise the plain-

tiffs. Were we to assume this to be true, we would have to reject the argument. The Texas Supreme Court in a recent decision emphasized that lack of surprise cannot serve as grounds for satisfying the good cause test. *Sharp v. Broadway Nat'l Bank*, 784 S.W.2d 669, 671 (Tex.1990) (reversing award which had been based on evidence admitted in violation of party's duty to supplement interrogatories); *Rainbo Baking Co. v. Stafford*, 764 S.W.2d 379 (Beaumont 1989, writ denied). Clearly, the absence of surprise, unfairness, or ambush does not satisfy the good cause exception to the sanction of automatic exclusion. *Id.; Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex.1986).

We are not persuaded that the record shows any evidence of good cause justifying the violation of the discovery rules with reference to the engineering drawings. We hold that the admission of the engineering exhibits, DX 58–62 was error.

■ Having established the threshold proposition that admission of the defense exhibits was error, we next address whether or not the erroneous admission of the defense exhibits was harmful. Reversible harm requires a showing that the errors complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case. TEX.R.APP.P. 81(b)(1). This issue requires a review of the entire record. *Boothe v. Hausler*, 766 S.W.2d 788 (Tex. 1989); *Gee*, 765 S.W.2d at 396.

For precedent dealing with the concept of reversible error on facts similar to those before us, we turn to a Texas Supreme Court case similar to *Lopez* in important respects. *Pittman v. Baladez*, 158 Tex. 372, 312 S.W.2d 210 (1958) involved a head-on collision between a pickup and a large International truck. A central issue was which vehicle crossed the center line of the highway. Evidence from plaintiff and defendants was in sharp conflict. In *Pittman*, as in the case before us, the trial court admitted over the injured party's objection certain evidence dealing with theories about the accident.

The Texas Supreme Court in *Pittman*, finding "the testimony sharply drawn" as between the plaintiff and defense witnesses, reversed the lower courts. The reversal was based on the testimony of a constable, a non-eyewitness to the collision. The constable had testified at trial that after the accident, "just to clear my mind on what I thought about it," he observed the collision scene and noted that about nine out of ten trucks crossed over the center line after negotiating a curve which appeared in the highway at that point.

The supreme court held the evidence inadmissible for the reason that the constable's observations were "under circumstances not substantially the same as those existing at the time of the occurrence of the collision." *Id.* 312 S.W.2d at 216. The supreme court then concluded that the improperly admitted evidence was reasonably calculated to and probably did cause the rendition of an improper judgment:

> Since the question of which vehicle crossed the center stripe was a vital issue in the case, and since the admissible evidence introduced by both parties was so evenly balanced, we conclude that the introduction of the incompetent evidence given by [the constable], in light of the record as a whole, amounted to such a denial of the rights of the petitioner as was calculated to cause and probably did cause the rendition of an improper judgment in the case.

*Id.* at 216–17.

■ In the prior appeal of this case, the Texas Supreme Court concluded that "[T]his trial was hotly contested and resulted in a materially unfair trial as a matter of law." *Lopez v. Foremost Paving Inc.*, 709 S.W.2d 643, 645 (Tex.1986). While there are many ways to describe the harmless error rule, the ultimate determination is necessarily a judgment call entrusted to the sound discretion of the reviewing court. *Lorusso v. Members Mutual Ins. Co.*, 603 S.W.2d 818, 821 (Tex.1980). The trial involved to a large degree "a battle of experts." In reviewing the record, we find that the second trial was just as hotly

contested as the first and the evidence, both lay and expert, just as conflicting.

In light of these facts and authorities, we must determine whether the erroneous admission of any of the defense exhibits requires reversal. Defendants' exhibits 59 through 61 were related in that all were drawings used to demonstrate a vital issue in the case: the angle of impact between the two vehicles. Defendants argue that their expert Nalle could have made the drawings while testifying if necessary. However, we note that these exhibits were professional drawings which were drawn to scale as opposed to renditions which might have been produced during the trial.

The harm which results from error in allowing evidence not disclosed in discovery presents a problem in which cross-examination and impeachment may be critically affected, but in which it will be virtually impossible for an appellant to show the appellate court how much more effective his cross-examination or rebuttal testimony would have been if he had been given adequate opportunity for discovery, or if his own expert had been given a fair chance to try to rebut the evidence. Here, the plaintiffs' experts had testified and left town before the undisclosed exhibits were presented. We find that the erroneous admission of defendants' exhibits 59 through 61 was harmful.

■ On the other hand, although defendants' exhibits 58 and 62 were not timely produced to plaintiffs' counsel, we do not find their erroneous admission to be harmful. The original of exhibit 58 had been prepared in 1982 or 1983. The one introduced during the second trial contained only minor changes. Defendants' exhibit 62 was a blank drawing of the road. During his testimony, Nalle drew on exhibit 62 to demonstrate, not to scale, how light "sprayed" out from the Lopez truck prior to the accident. This rough visual demonstration of the light spray could have been done on any writing surface during the witness' testimony. We find the admission of defendants' exhibits 58 and 62 to be harmless error.

■ Next we will consider the videotape, defendants' exhibit 63. We find it to be more than mere repetition of Nalle's verbal opinions and more than a rebuttal of Martinez' testimony, as urged by defendants. In our analysis of any harm to plaintiffs resulting from its erroneous admission, we will first discuss the form of the medium and then its contents.

■ The powerful effect of videotape on jurors has been recognized. *See* Misko, *Videotape for Litigation,* 26 So.TEX.L.J. 485 (1985). Pictures can "transmit a message far better than any human witness." *See Hannewacker v. City of Jacksonville Beach,* 419 So.2d 308 (Fla.1982). The average person learns more effectively by seeing rather than hearing. *Misko* at 485. Videotape makes a more lasting and intense impression on jurors than other forms of proof:

> [It] is a convincing means of demonstrative evidence because we live in the age of television. There is something about television and the videotape that has an unspoken credibility about it. They start the day in the morning watching "Good Morning, America" and wind up at night with the 11:00 news, if not something worse, and they are accustomed to it, and they accept it ... *Witke, Higgins and Babcock,* "Video Tape is Worth a Thousand Words": Use of Demonstrative Evidence in the Defense of a Product Liability Case, 50 Ins.Counsel J. 94, 97 (1983).

A Missouri court has observed that "caution is required in admitting motion pictures because, while the danger of false perspective or of intentional fabrication exists as to both still and motion pictures, these dangers are greater in the motion picture." *Cryts v. Ford Motor Co.,* 571 S.W.2d 683, 691 (Mo.App.1978).

We turn now to the content of the videotape. Defendants' expert Nalle explained that the film was made by using toy trucks which were placed on a specially drawn map of the roadway where the accident took place. The producers of the video calculated the position of the vehicles and photographed them with an overhead video camera. An editing machine was used to

put the frames together. The vehicles in the video appear to move in a realistic manner on a brightly lighted surface.

■ Cases involving films depicting accidents indicate the courts' concern with the accurate portrayal of such reenactments. Evidence of an experiment made out of court is allowable only when there is substantial similarity between conditions existing at the time of the occurrence giving rise to the litigation and the conditions created in the experiment. *Fort Worth & Denver Railway v. Williams,* 375 S.W.2d 279, 281–82 (Tex.1964).

An extensive discussion of the effect upon juries of accident simulation films and videos cannot yet be found in Texas case law. However, opinions from Texas as well as other jurisdictions indicate that similarity between the filmed portrayal and the actual incident is essential in the interest of fairness.

This court recently upheld a trial judge's refusal to allow a videotaped reenactment of an accident in which a driver was killed when her car struck a cable stretched across the road when the cable could not be seen on the videotape. *Lopez v. City Towing Associates,* 754 S.W.2d 254, 257–58 (Tex.App.—San Antonio 1988, writ denied). A Missouri court refused to allow an accident reenactment film when poor visibility from dust in the atmosphere was a vital issue in the case, and there was no dust portrayed in the reenactment. *Kaminski v. Board of Wayne County Road Commissioners,* 370 Mich. 389, 121 N.W.2d 830, 835–36 (1963). In another case, a Louisiana trial judge remarked that it made a great deal of difference whether a proffered accident reenactment movie showed a shorter tractor-trailer than the one involved in the accident at issue; the trial judge added that numerous other variables were involved in any attempted reenactment of the accident. *Owens v. Thornton,* 349 So.2d 431, 434 (La.App.1977). The trial judge's refusal to admit the reenactment film into evidence was upheld on appeal. *Id.* The Illinois Supreme Court reversed a judgment based on a film depicting an accident in the daylight when the actual incident occurred at night and there were other differences between the film and the occurrence. *French v. Springfield,* 65 Ill.2d 74, 2 Ill.Dec. 271, 357 N.E.2d 438, 442 (1978).

Courts' wariness of accident reenactment films stems from the fact that when films do not duplicate accident conditions with accuracy, juror confusion can result. *See Green v. General Motors Corp.,* 104 Mich. App. 447, 304 N.W.2d 600, 602 (1981); *Lahocki v. Contee Sand & Gravel,* 41 Md. App. 579, 398 A.2d 490, 503–04 (1979), *rev'd on other grounds, General Motors v. Lahoki,* 286 Md. 714, 410 A.2d 1039 (1980); *Cryts v. Ford Motor Co.,* 571 S.W.2d 683, 691 (Mo.App.1978).

The Hawaii Supreme Court recently distinguished between videotapes whose purpose is the demonstration of a scientific principle from those which attempt to reenact an occurrence. *Loevsky v. Carter,* 70 Haw. 419, 773 P.2d 1120, 1124–26 (1989); *see also Beers v. Western Auto Supply,* 646 S.W.2d 812, 815 (Mo.App.1982). The Hawaii court held that films used to illustrate a principle do not require strict adherence to the facts of the accident if the jury is carefully instructed as to the extent to which they are to use and consider the videotape. *Loevsky* at 1126. The Hawaii court found that a videotape purported to recreate an accident under controlled conditions favorable to its proponents, rejecting the contentions of its proponents that the video was offered to demonstrate a principle. *Id.* at 1125–26. The court concluded that the videotape created a "lasting visual impression upon the jury", and because it did not depict all the material facts surrounding the accident, it was untrustworthy and unduly prejudicial. *Id.* at 1123.

■ A Texas appellate court has held that a film intended for even a limited purpose, such as illustration of a principle or use as a visual aid, must show sufficient similarity to the actual accident in order to be admissible in evidence. *Ford Motor Co. v. Nowak,* 638 S.W.2d 582, 590 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); *see also Kainer v. Walker,* 377 S.W.2d 613, 616 (Tex.1964). However, the offering par-

ty's affirmative acknowledgement to the jury of dissimilarities between a videotaped reconstruction and the actual occurrence can serve to alleviate unfairness. *See Beers v. Western Auto Supply* at 815.

In the case before us, the videotape did not purport to illustrate any specific principle but, according to defendants, was shown to demonstrate "how the accident occurred." The jury was not instructed as to the extent to which it was to consider the videotape in light of factual dissimilarities with the actual occurrence. Both parties referred to the film in question as an accident reconstruction film. The defendants' expert witness also described it as a visual aid showing how the accident occurred. While narrating the video, defense witness Nalle did not explain differences between the depiction and the actual accident, nor did he ever mention fog or darkness. In the seven pages of testimony which comprise his narration of the video, the only statement made by Nalle which could arguably be construed as a reference to the fog and darkness was, "We're not telling you the exact visibility." Nalle admitted that the tractor-trailer in the video was shorter than the one actually involved in the accident.

The record shows that the videotape which was shown to the jurors in this case could clearly have been perceived by them as a simulated reenactment of the accident. What the jurors observed on the video was a pickup truck suddenly veering across visible and obvious center stripe markings into the pathway of the tractor-trailer rig. The producers of the video made no attempt to portray the fog or the darkness in which the accident actually occurred. The impact on the jurors' minds of this dissimilar simulation of the accident could have been considerable.

*Pittman v. Baladez,* 158 Tex. 372, 312 S.W.2d 210 (1958), was a vehicular collision case similar in many respects to the case before us. In *Pittman,* the question of which vehicle crossed the center stripe was a vital issue in the case. The Texas Supreme Court found reversible error resulted from the admission into evidence of an experiment conducted under conditions which lacked similarity to those of the actual occurrence. The supreme court ruled that the erroneous admission amounted to such a denial of the rights of the petitioner as was calculated to cause and probably did cause the rendition of an improper judgment. *Pittman,* 312 S.W.2d at 217. We likewise hold that the erroneous admission of the videotape, defendant's exhibit 63, was harmful.

■ It is the role of the courts to provide a level playing field for the advocacy of ideas, causes of action and defenses. The purpose of timely discovery is to further that goal so that each side has a fair opportunity to present the case to the jury. We believe that the admission of the engineering drawings (defense exhibits 59, 60, 61) and the videotape (defense exhibit 63) was contrary to that goal.

The policy underlying discovery rules is to make the adversary process a better instrument for arriving at the truth and to discourage trial by ambush. The erroneous admission of the defendants' exhibits was in direct conflict with these principles. Here, plaintiffs' experts testified and left town following their testimony, after which the defense was accorded the opportunity to introduce expert and technologically detailed exhibits which had not been made available to the plaintiffs' experts to analyze or rebut. This amounts to such a denial of the rights of the plaintiffs as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case.

Point of error number one is sustained. Given our disposition of point of error one, it is not necessary that we address the remaining points of error.

Accordingly, the judgment of the trial court is reversed and the cause is remanded for new trial.