In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00159-CV


______________________________




SHERRY HORN, INDIVIDUALLY AND AS


EXECUTRIX OF THE ESTATE OF PAT HORN, Appellant


V.



JOE HEFNER, HEFNER ROOFING COMPANY,


AND PEDRO PADRON VENTURA, Appellees



 


On Appeal from the 276th Judicial District Court


Morris County, Texas


Trial Court No. 20,189




 





Before Morriss, C.J., Ross, and Grant,* JJ.

Opinion by Justice Grant



______________

*Ben Z. Grant, Justice, Retired, Sitting by Assignment

O P I N I O N



 Sherry Horn, individually and as executrix of the estate of Pat Horn (Horn) appeals the jury
verdict for Joe Hefner, Hefner Roofing Company, and Perdro Ventura (Hefner). This is a personal
injury suit arising out of a vehicle collision that occurred October 14, 1996. Horn alleged Hefner 
was negligent in causing the collision. Horn contends that the trial court abused its discretion by
admitting Hefner's experiment video into evidence, that she was entitled to a finding of negligence
as a matter of law, and that the jury's verdict was against the great weight and preponderance of the
evidence. 

 Hefner Roofing repairs and constructs roofs. Hefner was repairing a roof at a private
residence in Pittsburg, Texas, when one of its employees, Ventura, backed a Hefner truck out of the
private driveway onto Jefferson Street. 

 Sherry Horn and her late husband (who was killed in an unrelated subsequent accident) were
traveling in a Ford Astro minivan on Jefferson Street. The Hefner truck and Horn's vehicle collided,
causing Horn to suffer physical injuries. The jury returned a verdict finding no negligence by
Hefner.

Out-of-Court Experiment Video

 Horn's first point of error is that the trial court abused its discretion when it admitted Hefner's
experiment video. The trial court overruled Horn's objection to the video, but offered to delete the
sound because of comments made during the experiment. Horn declined the court's offer. When
an experiment is conducted out of court and in the absence of opposing counsel, there must be a
substantial similarity between the conditions depicted on the video and the actual event that is the
subject of litigation. Fort Worth & Denver Ry. Co. v. Williams, 375 S.W.2d 279, 281-82 (Tex.
1964). However, the conditions do not need to be identical. Id. When there is dissimilarity in the
conditions, the admission of the experiment is within the trial court's discretion if the differences are
minor or are explained to the jury. Id. at 282. It is within the discretion of the trial court to
determine whether the existence of a dissimilarity between those conditions causes evidence of the
experiment to confuse rather than aid the jury and, thus, whether the evidence should be excluded. 
Id. at 382; Sosa by and through Grant v. Koshy, 961 S.W.2d 420, 430 (Tex. App.-Houston [1st
Dist.] 1997, pet. denied).

 The standard requiring "substantial similarity" between the experiment and the actual event
was developed in Williams. 375 S.W.2d at 281. In Williams, an automobile-train collision caused
the death of Williams. Fort Worth Railway introduced evidence of a motion picture film of an
experiment made by their attorney. The experiment sought to show that a beam of light similar to
a train's light would cause a "wall of light," obstructing the view of a person approaching the beam. 
Id. 

 In Williams, the Texas Supreme Court held that the admissibility of the experiment testimony
was within the trial court's discretion because the dissimilarities between the experiment and the
actual event were minor and could be explained to the jurors without confusing them. Id. at 282. 
The Texas Supreme Court reversed and remanded for a new trial. Id. at 284. 

 The differences between the experiment and the actual event in Williams were (1) the
position of the lights and the distances in the experiment were not clear and the distance of the actual
event was 1,300 feet, (2) the only evidence of similarity of the scenes shown on the film and the
actual appearance came from an interested nonexpert witness, and (3) there was no evidence
establishing the similarity of the experiment light's candlepower and the actual light's candlepower. 
Id. at 282-83.

 In Williams, there was no explanation to the jury concerning the difference between the video
and the actual event. To ensure fairness, the Texas Supreme Court remanded the case for a new trial
so all the evidence could be fairly considered by a jury. Id. 

 Several courts of appeals have tackled the issue of whether an experiment video was
substantially similar to the actual event. See Koshy, 961 S.W.2d at 430 (holding no abuse of
discretion because the expert was cross-examined about the differences between the video and the
actual event); Univ. of Tex. v. Hinton, 822 S.W.2d 197, 203 (Tex. App.-Austin 1991, no writ)
(holding no abuse of discretion because differences were explained to the jury); Lopez v. Foremost
Paving, Inc., 796 S.W.2d 473, 481 (Tex. App.-San Antonio 1990, writ dism'd) (finding an abuse
of discretion because there was no explanation of the differences between the video and the actual
event); City of Dallas v. Cox, 793 S.W.2d 701, 734 (Tex. App.-Dallas 1990, no writ) (holding no
abuse of discretion because differences were explained to the jury); Garza v. Cole, 753 S.W.2d 245,
247 (Tex. App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.) (holding no abuse of discretion because
there was testimony explaining the differences between the video and the actual event). These
decisions hinged on whether the differences between the experiment video and the actual event were
explained to the jury. Id. 

 The Houston First Court of Appeals in Koshy found the trial court did not abuse its discretion
when it admitted an accident reconstruction video into evidence. 961 S.W.2d at 430. On
cross-examination, the accident reconstructionist in Koshy admitted: (1) the video showed no cars
in the drive-through even though on the day of the accident there were three or four cars in the
drive-through; (2) the video showed a white pickup truck, even though Koshy was driving a car; and
(3) the video was made on a sunny day, but the accident occurred on an overcast day. Id. The court
of appeals found no abuse of discretion because the expert was vigorously cross-examined about the
differences between his reconstruction video and the actual events. The court further found that the
comparative differences about the experiment go to its weight, not its admissibility. Id. 

 The Austin Court of Appeals found no abuse of discretion concerning the admission of an
out-of-court experiment in Hinton. 822 S.W.2d at 203. In Hinton, the plaintiff sued the University
of Texas for negligence because a plastic grate from a light fixture fell about five feet and struck
Hinton in the head. Id. at 199. Hinton introduced a video into evidence that showed a plywood
cutout, the size of the plastic grate, falling and striking a dummy. Id. at 202. The cutout represented
the plastic grate; the dummy represented Hinton. Id. The University argued the heavier plywood
cutout struck the dummy with much greater force than the plastic grate struck Hinton, leaving the
jury with an erroneous and prejudicial impression in that regard. Id. at 202-03. However, Hinton's
expert testified the videotaped experiment was not meant to be an exact duplication of the incident
in which Hinton was injured. Id. at 203. Plywood was used in the re-creation of the accident,
instead of a plastic grate, because they could not access a grate similar to the one which fell on
Hinton. Id. On cross-examination, the expert testified the purpose of the exhibit was to show how
the grate fell, not how forcefully the grate struck Hinton. Id. The Austin Court of Appeals found
there was no abuse of discretion because the differences were explained to the jury and there was no
evidence of confusion. Id.

 The Dallas Court of Appeals found no abuse of discretion when the trial court admitted an
experiment video in Cox. 793 S.W.2d at 734. The experiment in Cox was a ballistics test, designed
to demonstrate the effects of bullets on Cox's body. The Dallas court found there was no abuse of
discretion because the test involved conditions substantially similar to the occurrence at issue, and
necessary dissimilarities were explained adequately to the jury. Id. 

 The San Antonio Court of Appeals found the trial court abused its discretion by admitting
an experiment video in Lopez. 796 S.W.2d at 481. The court held the video could have been
perceived as a simulated re-enactment of the incident. Id. Further, there was no explanation to the
jury of the differences between the experiment and the actual event. Id. The video did not purport
to illustrate any specific principle but, according to the defendants, was shown to demonstrate "how
the accident occurred." Id. What the jurors observed on the video was a pickup truck suddenly
veering across visible and obvious center stripe markings into the pathway of a tractor-trailer rig. 
Id. The producers of the video made no attempt to portray the fog or the darkness in which the
accident actually occurred. Id. The impact on the jurors' minds of this dissimilar simulation of the
accident could have been considerable. Id. 

 In Garza, the Houston Fourteenth Court of Appeals held there was no abuse of discretion by
the trial court concerning the admission of an experiment video. 753 S.W.2d at 247. The Garza
video was an accident reconstruction video. There was testimony that weather conditions were
similar to the day of the accident; that the video was made traveling in the same direction as the
appellee; and that the vehicle was traveling at the same speed at which the appellee was driving. Id. 
There was also testimony of the differences between the video and the actual accident. Id. The court
held the discrepancies were adequately explained and went to the weight of the evidence, not its
admissibility. Id.

 In the present case, the trial court viewed the video in question outside the presence of the
jury. The trial court ultimately determined the video was substantially similar to the actual events
and the discrepancies were either minor or they were explained to the jury. 

 We have reviewed the differences between the video and the testimony concerning the actual
occurrence. We find that most of those differences were explained by the examination and cross-examination of the expert witnesses. We find the video served the jurors to the extent it gave them
an opportunity to see the scene of the collision. Further, we find that with the explanations provided
to the jury, the dissimilarities did not create a prejudicial effect on the jury. This point of error is
overruled. 

Findings as a Matter of Law

 Horn contends she was entitled to a verdict as a matter of law. To the extent these
contentions are based on disputed facts that are discussed under the next point, relief under this point
is denied.

 A portion of this argument is based on negligent entrustment, including Ventura not having
a driver's license, not being trained to drive the truck involved in the collision, the keys being left
in the truck, and the failure to inform Hefner's officers and director Ventura was not to be allowed
to drive the Hefner construction truck. The allegation cannot be a basis for causation unless there
was a finding that these alleged acts of negligence or Ventura's negligence caused the collision and
damages.

Verdict Against Great Weight and Preponderance of the Evidence

 Horn contends the jury's verdict was against the great weight and preponderance of the
evidence. Courts of appeals are to weigh all the evidence in a case to determine if the verdict is so
against the great weight and preponderance of the evidence as to be manifestly unjust. Pool v. Ford
Motor Co., 715 S.W.2d 629 (Tex. 1986).

 Central to our system of justice is reliance on the fact-finder to resolve disputed issues of fact. 
Jaffe Aircraft Corp. v. Carr, 867 S.W.2d 27, 28 (Tex. 1993). This usually means a jury will be
entrusted with the vital responsibility to act as "the sole judges of the credibility of the witnesses and
the weight to be given their testimony." Id. (citing Tex. R. Civ. P. 226a(III)).

 This court may review the factual sufficiency of the evidence supporting a jury's finding to
prevent a manifestly unjust result, but we cannot set aside such a finding merely because we would
have reached a different and more reasonable result had we been jurors. Pool, 715 S.W.2d at 634. 
Factual sufficiency review must be as fair to a defendant challenging an appellate reversal of a
negative jury finding as it is to a plaintiff who challenges appellate reversal of an affirmative jury
finding. Cropper v. Caterpillar Tractor Co., 754 S.W.2d 646, 649-53 (Tex. 1988).

 Horn had the burden to establish that Hefner was negligent by a preponderance of the
evidence. Horn raised evidence to establish negligence, but this evidence was controverted by
Hefner's expert. Horn testified that she saw the Hefner truck already backed into the roadway when
she reached the top of the hill she was traveling on Jefferson Street and that she immediately applied
the brakes and tried to stop. She further testified Ventura was backing the truck and straddled the
lane in which Horn was driving. She also testified there was no indication Ventura applied the
brakes or was moving forward at the time of the accident.

 The investigating officer, Sue Presley, did not testify, but her report was entered into
evidence. Officer Presley concluded Ventura caused the collision by backing without safety and
failing to yield the right-of-way when backing from a private drive. Because Officer Presley did not
testify, there is no direct showing of the basis of her conclusion. There is no indication she saw the
vehicles before the collision or during the collision. She observed the vehicles' locations after the
collision. She may have also talked to Ventura. Nothing in the record states what Ventura might
have said to her. The police report was introduced into evidence without objection. The jury had
a right to believe or disbelieve Presley's conclusions.

 John Painter, the expert for the defense, assumed Ventura stopped at the edge of the road and
looked both ways before backing into the street. Painter based his conclusion on what he called the
"instinct of preservation." While this is a recognized principle of psychology, the law of torts does
not assume everyone follows this practice. If such an assumption were made, it would be assumed
people do not run stop signs or stop lights, do not speed, do not consume alcohol while driving, do
not consume drugs that would be hazardous to the consumer's health, and many other assumptions
that the law recognizes frequently occur in human experiences. This is not a legal basis for us to
determine Ventura did not yield the right-of-way. On the other hand, we recognize that a motorist
has the right to assume an approaching motorist will abide by the traffic laws. See Whitehead v.
Tobias, 7 S.W.3d 658, 663 (Tex. App.-Texarkana 1999, op. on reh'g). However, there is no direct
evidence as to whether Ventura stopped and looked both ways before entering the street. We cannot
infer from the officer's report Ventura made an admission against interest to that effect. Such an
inference could have been made by the jury, but was not.

 Hefner raised the last clear chance doctrine in its brief. The Texas Supreme Court in French
v. Grigsby, 571 S.W.2d 867 (Tex. 1978), held that the doctrine of last clear chance or discovered
peril was subsumed with the advent of comparative negligence in Tex. Rev. Civ. Stat. Ann. art.
2212(a) (repealed 1985). See B & B Auto Supply, Sand Pit, & Trucking Co. v. Central Freight Lines,
Inc., 603 S.W.2d 814, 816 (Tex. 1980); Davila v. Sanders, 557 S.W.2d 770 (Tex. 1977); De Anda
v. Blake, 562 S.W.2d 497 (Tex. Civ. App.-San Antonio 1978, no writ).

 Much of the testimony concerning causation was brought to the jury in the form of the
confrontation between the expert witnesses. Painter estimated Horn would have been able to see the
Hefner truck anywhere from 310 to 318 feet. Painter estimated Horn had 6.8 seconds from the time
she saw the vehicle until she struck the truck. Painter testified it would be ludicrous or highly
improbable that Ventura sat in the road for 6 seconds. Painter calculated it had taken Ventura 4 or
5 seconds to back up (or to back out of the driveway) after his last opportunity to check the crest of
the hill, partially because he had to look in both directions, and before he began to move the vehicle,
another 2 seconds were taken, and after Ventura reached the road, and came to a full stop so he could
go forward, then he had to initiate a gear change, which would take another 1 to 2 seconds. Based
on that calculation, and the calculation of how long Horn had the Hefner truck in sight, Ventura
would have already entered the road before Horn would have come into his view. This is in conflict
with Horn's expert, Andy Irwin. Irwin testified Ventura could have seen Horn before he entered the
street.

 Horn testified the Hefner truck was still backing at the time of impact. However, Painter
concluded that because of the distance the truck was knocked forward by the impact, the Hefner
truck was either in neutral or forward gear-thus, Ventura could not have been going backward at the
time the truck was struck.

 There was evidence on both sides of the issue from which the jury could have decided. The
jury accepted the defense's version of how the collision occurred and answered the jury questions
accordingly. We cannot say this was against the great weight and preponderance of the evidence so
as to be manifestly unjust.

 We affirm the judgment of the trial court.




 Ben Z. Grant*

 Justice


*Justice, Retired, Sitting by Assignment



Date Submitted: November 7, 2002

Date Decided: August 25, 2003